Plaintiff-appellant, the State of Ohio appeals from an order suppressing evidence. The State contends that defendant-appellee Richard Lee Rainwater was not restrained of his liberty at the time that the evidence was first observed. We agree. Accordingly, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
 I
In October, 1996, Dayton police officer Mark Spiers and Rainwater had an encounter. Spiers, who was the only witness to testify at the suppression hearing, described that encounter as follows:
 Q. Tell us what first drew your attention to Mr. Rainwater, sir.
 A. Well, I was just on routine patrol. I had turned off from Catalpa, I believe, onto Cherry Drive. I noticed a bright purple Firebird sitting in front of the apartment complex occupied by two subjects. I glanced at the front of the apartment building. I saw Mr. Rainwater, who appeared to step away from the door, but walked back to the door quickly. Grabbed it. It was locked. He walked back to his car.
 I had pulled my cruiser next to the car and was talking to the two individuals inside the car.
Q. What time of day or night was this?
A. Around 7:00 p.m. Still daylight. An October day.
 Q. What can you tell us about the quality of the neighborhood you were in?
 A. Actually, it is a — it is a fairly residential area. Got a few apartment complexes in it. We do have some thefts from autos up there and burglaries. That's the main problem in that area. It is not known for the drug activity up there on Cherry Drive.
Q. Tell us what happened.
 A. Mr. Rainwater came walking to his car. He came around the back of it to the driver's side. At that point, I said something like, hi. What's going on? He said, I'm here to visit a friend. He was clutching something in the left hand. I asked, what do you have in your left hand? I was still in my cruiser. He opened his hand and turned his hand inward. As he opened it, I could see a capsule falling to the ground. It appeared he was going to step on it. I told him if he touched it, it would be destruction of evidence.
 I got out of the car. He had his hands open. There was another capsule stuck to the palm, sweat or something. I grabbed that. It was a clear capsule. Contained what appeared to be crack cocaine.
* * *
 Q. I want to make sure we understand the relative position of the parties, Sergeant. It was your testimony that you had remained in your vehicle throughout this initial encounter?
A. Yes.
 Q. And where was Mr. Rainwater in relation to your vehicle when you said, what do you have in your hand, or what did you say? I am sorry. Let's get that straight.
 A. I said something like, hi, when he first came around the car. He was walking in between his driver's door and my driver's door. We are in opposite directions along the car.
 I came on Catalpa. I saw the purple Firebird. I stopped to see what was going on. When he came walking up, he walked between the cars. I noticed he had something clutched tightly in his hand. I said, what's in your hand? Asked him a question. He opened his hand. Was turning it inward. I saw the capsule fall to the ground.
* * *
 Q. Now, you indicated that it was — that your cruiser in relationship to the purple Firebird was driver's door to driver's door.
A. Right.
 Q. What was the distance between your cruiser and the purple Firebird?
 A. I was on the wrong side of the street, but there is still three feet, four feet away. I was talking to a passenger, asking if they lived there, through my driver's window, and their window was down.
 Q. If a person had stood at an equal distance between your cruiser and the purple Firebird, would they have been able to touch both cars by putting their arms out?
A. I'd say they probably could touch both cars, yes.
 Q. You were in a uniform, white shirt, displaying rank of sergeant?
A. Yes.
Q. You were in a marked cruiser?
A. Yes.
 Q. Clearly identified yourself as a Dayton Police Officer?
A. Yes.
Q. With overhead lights?
A. Yes.
Q. And you were armed that day with a service weapon?
A. Yes.
 Q. You did not identify yourself as a police officer verbally, did you?
 A. No, I didn't. I was actually just talking to the two kids in the car, finding out if they lived there, what they were doing in the area. Basically, just, I don't know, I had never seen a purple Firebird there. I asked if they lived there. Friendly conversation.
Rainwater was arrested and charged, by indictment, with Possession of Cocaine. He moved to suppress the evidence obtained as a result of this encounter with Officer Spiers. Following a hearing on the motion, the trial court granted the motion, and suppressed the evidence. From that suppression order, the State appeals.
 II
The State's sole Assignment of Error is as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY SUSTAINING APPELLEE'S MOTION TO SUPPRESS, BECAUSE UNDER THE TOTALITY OF THE CIRCUMSTANCES, APPELLEE WAS NOT UNLAWFULLY DETAINED.
The trial court sustained the motion to suppress upon the ground that the evidence was obtained as the result of an unlawful investigative stop — that is, a stop not supported by the requisite reasonable and articulable suspicion of criminal activity. Not every encounter between a police officer and a citizen is a stop constituting a restraint upon a citizen's liberty. Approaching a person in a public place, engaging a person in conversation, requesting information, examining the person's identification, and even requesting to search the person's belongings, without more, is deemed to be a consensual encounter not implicating the protections of the Fourth Amendment.Florida v. Bostick (1991), 501 U.S. 429, 111 S.Ct. 2382. Significantly, in that case the "consensual encounter" took place between a law enforcement officer and a passenger on a bus stopped at a scheduled stop that had been boarded by the law enforcement officer. In that case, the vehicle with which the defendant had associated himself was obviously not going to move until after the law enforcement officer left; nevertheless, the encounter was deemed to be consensual. In the case before us, the trial court based its conclusion, at least in part, upon a factual finding that the relative positions of Rainwater's vehicle and Spiers's cruiser made it impossible for Rainwater to get in his vehicle and leave the vicinity until Spiers moved his cruiser.
The record is not crystal clear in this regard, but even assuming that the trial court's factual conclusion is sound, there is nothing in the record to suggest that Spiers had stopped his cruiser for the purpose of detaining Rainwater. Spiers was still in his cruiser, and had merely pulled alongside Rainwater's vehicle in order to engage the two occupants of that car in conversation. When Rainwater returned to his car, Spiers engaged Rainwater in conversation.
Whether an individual has been detained, for Fourth Amendment purposes, is a sensitive factual determination that must be based upon the totality of circumstances. An encounter remains consensual as long as the police officer, by physical force or show of authority, has not restrained the person's liberty so that a reasonable person would not feel free to walk away. UnitedStates v. Mendenhall (1980), 446 U.S. 544, 553, 64 L.Ed.2d 497.
If Spiers had stopped his cruiser in a manner that prevented Rainwater's car from leaving the area, and then got out of his cruiser (before talking to Rainwater), a critically different situation would have arisen. There, the police officer's intention to obstruct the individual's ability to leave the scene would have been apparent to a reasonable individual, who would likely have understood that he was not free to leave the scene until the officer completed his investigation.
Merely pulling alongside a car and engaging the occupants in conversation, while still seated in a police cruiser, without more, does not manifest a purpose, on the part of a police officer, to prevent the occupants of the car from leaving until the officer has completed his investigation. To the contrary, it is more indicative of a purpose to engage the occupants of the car in a brief conversation, with the expectation that the police officer will not be getting out of his cruiser.
Upon this record, based upon the totality of the circumstances, we conclude that Rainwater had not been deprived of his liberty, for Fourth Amendment purposes, at the time when Spiers first observed what he reasonably believed to be crack cocaine. The State's sole Assignment of Error is sustained.
 III
The State's sole Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause isRemanded for further proceedings consistent with this opinion.
YOUNG, P.J., and BROGAN J., concur.
Copies mailed to:
Karen L. Sollars
Suzanne M. Lough Wynn
Hon. John W. Kessler